# United States Court of Federal Claims
No. 06-922 L
December 1, 2011

| | |
|---|---|
| **Lower Brule Sioux Tribe,**  *Plaintiff*,  v.  **United States of America,**  *Defendant.* | Jurisdiction; 28 U.S.C. § 1500; Indian Trust; Operative facts |

*Brian J. Leinbach*, Engstrom, Lipscomb & Lack, Los Angeles, CA, for plaintiff.

*Romney S. Philpott, III*, Natural Resources Section, Environment and Natural Resources Division, United States Department of Justice, Washington, DC, for defendant.

## OPINION and ORDER

**Block,** *Judge.*

Before the court is defendant's motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), Rules of the United States Court of Federal Claims ("RCFC"). Center stage once again is 28 U.S.C. § 1500, the source of much controversy over the years. Simply put, § 1500 bars this court from exercising jurisdiction over any suit "for or in respect to" the same claim as a suit pending in any other court. What this means in practice has produced inconsistent results that make this statute anything but simple in its application.

Indeed, just a few years ago this judge joined an ever increasing chorus observing that the section constitutes a potential trap to litigants.[1] And one recently retired justice of the Supreme Court has even called on Congress to repeal it.[2]

---

[1] *Yankton Sioux Tribe v. United States*, 84 Fed. Cl. 225, 226-27 (2008) (citing *Keene Corp. v. United States*, 508 U.S. 200, 222 (1993) (Stevens, J., dissenting; *A.C. Seeman, Inc. v. United States*, 5 Cl.Ct. 386, 389 (1984); Paul F. Kirgins, *Section 1500 and the Jurisdictional Pitfalls of Federal Government Litigation*, 47 Am. U. L. Rev. 301 (1997); Payson R. Peabody et al., *A Confederate host that Haunts the Federal Courts: The Case for the Repeal of 28 U.S.C. § 1500*, 4 Fed. Cir. B.J. 95 (1994)).

[2] *Kenne*, 508 U.S. at 222 (Stevens, J., dissenting) ("[T]he Court's interpretation of § 1500 today may have the salutary effect of hastening its repeal or amendment.").

To be sure, earlier this year, the Supreme Court once again grappled with § 1500, this time in *United States v. Tohono O'Odham Nation*, 131 S. Ct. 1723 (2011). There the Court somewhat clarified matters by holding that two suits may be "for or in respect to" the same claim even if they are dissimilar in terms of the relief sought. *Id.* at 1731. According to the Supreme Court, whether one suit is "for or in respect to" the same claim as another depends on whether the two suits share substantially the same "operative facts." *Id.*

Defendant's motion to dismiss raises this question. It is alleged therein that because a previously filed district court action shares the same operative facts underlying the current Court of Federal Claims case, this court lacks jurisdiction to adjudicate the case at bar. For the reasons given below, the court concludes that the two suits do indeed share the same operative facts, and, accordingly, the court must grant defendant's motion.

## I. BACKGROUND

Plaintiff is a federally recognized sovereign Indian tribe residing on the Lower Brule Reservation in South Dakota. (Compl. ¶ 2). Pursuant to treaties, statutes, and other applicable law, defendant holds in trust for plaintiff certain assets, land, and natural resources. (Compl. ¶¶ 5-20). The suits at issue here concern defendant's duties as trustee.

On December 30, 2005, plaintiff filed a complaint in the United States District Court for the District of Columbia against the Secretary of the Interior and the Secretary of Treasury seeking declaratory, injunctive, and other relief. (Def.'s Mot. to Dismiss, Ex. A, ¶¶ 1, 27-39). Plaintiff later amended its complaint, adding the Special Trustee, Office of Special Trustee for American Indians ("OST"), as defendant. Plaintiff in its amended complaint ("the D.D.C. Complaint") alleged that the defendants mismanaged plaintiff's trust assets and failed to provide a full and accurate accounting of plaintiff's trust property and funds. (Def.'s Mot. to Dismiss, Ex. A, ¶¶ 21, 26).

Significantly, on December 28, 2006, while the district court suit was pending, plaintiff filed a complaint in this court ("the Complaint") seeking damages for breach of fiduciary duties and mismanagement of the same trust. (Pl.'s Reply at 1, 3; Def.'s Mot. to Dismiss, Ex. A at 16-17). Plaintiff contends that defendant breached its fiduciary duties by mismanaging trust assets and by failing to attain the highest rates of interest and income on plaintiff's trust funds. (Compl. ¶¶ 29, 42). Plaintiff also alleges that defendant has "failed to provide [an] accounting or other sufficient information" which would permit plaintiff to determine the extent of any losses. (Compl. ¶ 28).

On October 10, 2008, this court issued an order to show cause as to why plaintiff's suit should not be dismissed for lack of jurisdiction pursuant to 28 U.S.C. § 1500 and *Yankton Sioux Tribe v. United States*, 84 Fed. Cl. 225 (2008). After receiving plaintiff's response, this court issued an order on December 11, 2008, staying the case pending the outcome of *Tohono O'Odham,* then on appeal to the Federal Circuit. This court issued another order to stay after the Supreme Court granted certiorari in *Tohono O'Odham*.

After the Supreme Court rendered its decision in *Tohono O'Odham*, defendant filed the instant motion to dismiss on June 10, 2011. Defendant alleges that the suit before the court

arises from the same operative facts as the district court suit and consequently must be dismissed pursuant to 28 U.S.C. § 1500 (2008).  Plaintiff filed a response, and defendant filed a reply.

## II. DISCUSSION

### A. Standard of Review

Those seeking relief from a federal court always bear the burden of establishing the court's jurisdiction by a preponderance of the evidence.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).  Where, as here,[3] the facts on which plaintiff's invocation of jurisdiction are based are not in dispute, the court must regard the allegations stated in plaintiff's complaint as true, drawing all reasonable inferences in plaintiff's favor.  *Folden v. United States*, 379 F.3d 1344, 1354 (Fed. Cir. 2004) (citation omitted); *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995).  If, however, the court finds it lacks subject-matter jurisdiction, the court must dismiss the complaint, and may even do so on its own accord *sua sponte*.  RCFC 12(h)(3).

### B. Jurisdiction

Like for all federal courts (except for the U.S. Supreme Court), the Court of Federal Claims' jurisdiction need be defined by Congress.  *See Keene*, 508 U.S. at 207; *see also* U.S. Const. art. 1, § 8; *id.* art. 3, §§ 1, 2.  In particular, the Indian Tucker Act provides for this court's jurisdiction over

> any claim against the United States . . . in favor of any tribe, band, or other identifiable group of American Indians . . . whenever such claim is one arising under the Constitution, laws or treaties of the United States, or Executive orders of the President, or is one which otherwise would be cognizable in the Court of Federal Claims if the claimant were not an Indian tribe, band or group.

28 U.S.C. § 1505.  Claims "which otherwise would be cognizable in the Court of Federal Claims" include those covered by the Tucker Act, 28 U.S.C. § 1491(a)(1)—that is, claims "against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  Thus, the Indian Tucker Act "allows a Native American tribe to bring suit in the Court of Federal Claims like any other plaintiff."  *Yankton Sioux Tribe*, 84 Fed. Cl. at 228.

Of course, the Tucker Act and Indian Tucker Act do not themselves create a substantive right enforceable against the United States for monetary relief.  *United States v. Testan*, 424 U.S. 392, 398 (1976); *Ferreiro v. United States*, 501 F.3d 1349, 1351 (Fed. Cir. 2007) (citing *Testan*, 424 U.S. at 398).  Rather, plaintiff must establish an independent right to monetary damages based upon a money-mandating source within a contract, regulation, statute, or constitutional

---

[3] The dispute in this case centers around whether certain facts permit or disallow this court's jurisdiction as a matter of law, not whether those facts are true or false.

provision. *Id.* In Indian trust cases, such as the one *sub judice*, "this separate substantive right may be found in a number of statutes and regulations which establish the government's fiduciary obligation to manage and operate Indian land and resources." *Yankton Sioux Tribe*, 84 Fed. Cl. at 228 (citing *United States v. Mitchell*, 463 U.S. 206, 226 (1983)).

That aside, this court's jurisdiction is further limited by § 1500, which provides:

> The United States Court of Federal Claims shall not have jurisdiction of any claim *for or in respect to which* the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

(emphasis added).[4] Put simply, this court "has no jurisdiction over a claim if the plaintiff has another suit for or in respect to that claim pending against the United States or its agents." *Tohono O'Odham*, 131 S. Ct. at 1727. There is no question that plaintiff's suit before the district court was "pending" when plaintiff filed the complaint in this court. The only question, therefore, is whether the suits are "for or in respect to" the same claim.

That question, in turn, depends upon whether the suits "are based on substantially the same operative facts." *Id.* at 1731. Although the Supreme Court did not define "operative facts" in *Tohono O'Odham*, the ordinary meaning of the term extends to those facts that are effective or useful in resolving the case. *See* Webster's Third New International Dictionary 1581 (defining "operative" as "producing an appropriate or designed effect"). The meaning of "operative" is, in this sense, very close to the meaning of "material." *See id.* at 1392 (defining "material" as "requiring serious consideration by reason of having a certain or probable bearing on the proper determination of a law case"). Thus, regardless of shared forms of relief or theories of liability, two suits share the same operative facts when the facts that are relevant and material to *some* theory of liability are the same in each. *Cf. Tohono O'Odham*, 131 S. Ct. at 1731 (holding that similarity in terms of relief sought is irrelevant); *Keene*, 113 S. Ct. at 2042-43 (holding that similarity in terms of underlying legal theories is irrelevant) (citing *British American Tobacco*

---

[4] Section 1500 is the modern incarnation of Congress' response to a post-Civil War exigency, namely, duplicative suits commenced by residents of the former Confederacy (the so-called "cotton claimants") seeking compensation for lost property under different theories of liability. *Keene*, 508 U.S. at 206. The cotton claimants are gone, but the statute designed to thwart them remains, substantially unchanged. *Id.* at 206-07. As suggested *supra*, § 1500 can create hardships for plaintiffs, especially by denying them an opportunity for complete relief. *See, e.g.*, *Johns-Manville Corp. v. United States*, 855 F.2d 155, 1567 (Fed. Cir. 1988) ("Claims are the same where they arise from the same operative facts even if the operative facts support different legal theories which cannot all be brought in one court."); *Central Pines Land Co. v. United States*, 99 Fed. Cl. 394, 406-07 (2011) (noting that § 1500 operated to deprive the court of jurisdiction in a case more than a decade old even though this resulted in incomplete relief for plaintiffs). Although § 1500 may be an anachronism depriving litigants of a fair opportunity to assert their rights, "the 'proper theater' for such arguments . . . 'is the halls of Congress, for that branch of the government has limited the jurisdiction of the Court of Claims.'" *Keene*, 508 U.S. at 217 (quoting *Smoot's Case*, 15 Wall. 36, 45 (1873)).

*Co. v. United States*, 89 Ct.Cl. 438 (1939) (*per curiam*)); *see also Johns-Manville Corp.*, 855 F.2d at 1567.

This practical, functional approach to discerning and comparing operative facts accords with the practice of the Supreme Court and lower courts, which have eschewed narrow and formalistic conceptions of operative facts. *See Keene*, 508 U.S. at 213 ("[C]ongress did not intend [§ 1500] to be rendered useless by a narrow concept of identity providing a correspondingly liberal opportunity to maintain two suits arising from the same factual foundation."); *see also Central Pines*, 99 Fed. Cl. at 401 ("[T]he facts alleged in two complaints need not be identical for purposes of section 1500 to apply; rather, the two complaints must stem from the same events.") (citing *Griffin v. United States*, 590 F.3d 1291, 1294 (Fed. Cir. 2009) and *Trusted Integration, Inc. v. United States*, 93 Fed. Cl. 94, 100-103 (2010), *rev'd in part by* 2011 WL 4888787 (Fed. Cir. Oct. 14, 2011)); *Ak-Chin Indian Community v. United States*, 80 Fed. Cl. 305, 319 (2008) (describing the "operative facts" as "those facts upon which plaintiff's allegations of breaches of the government's trust responsibility are based"). Legal theories and nomenclature aside, a court must ascertain whether the material facts—those "upon which plaintiff's allegations of breaches . . . are based," *Ak-Chin Indian Community*, 80 Fed. Cl. at 319—are substantially the same in the two suits. If they are, then this court's jurisdiction is precluded.

Accordingly, to solve the jurisdictional riddle, the court must compare the Complaint and the D.D.C. Complaint to determine whether plaintiff's suits share substantially the same operative facts. *See Yankton Sioux Tribe*, 84 Fed. Cl. at 231-33.

**C. Plaintiff's Complaints Share the Same Operative Facts**

Defendant argues that plaintiff's complaints share the same operative facts because they both seek judicial review of defendant's management of the same resources and assets and because there is substantial overlap in the particular breaches alleged. (Def.'s Mot. to Dismiss at 7, 9-10). Defendant also points to the acknowledgment in the Complaint that the accounting sought in the district court suit could provide evidence to be used in the suit before this court. (Def.' s Reply. at 5-6; Compl. ¶ 28).

Plaintiff argues that the similarities between the two complaints concern only "background facts." (Pl.'s Opp. at 5-6). According to plaintiff, "the operative facts are different where the conduct related to distinct duties [is] at issue in the two complaints." (Pl.'s Opp. at 6). The real operative facts of the district court suit, plaintiff insists, are to be found in paragraphs 17 through 30 of the D.D.C. Complaint, describing defendant's accounting obligations. (Pl.'s Opp. at 6). The real operative facts of the suit before this court**,** says plaintiff, are instead found in paragraphs 20 through 42, identifying "the source and nature of defendant's fiduciary obligations to manage tribal monetary and non-monetary trust assets." (Pl.'s Opp. at 6).

Comparing the complaints side-by-side, the court concludes that the two suits share substantially the same operative facts.

The similarities between the two complaints are striking. In both, plaintiff alleges that the United States holds monies, land, and natural resources in trust for plaintiff. (Compl. ¶¶ 8-21; Def.'s Mot. to Dismiss, Ex. A ¶ 8). In both, plaintiff alleges that defendant's duties include

- ensuring tribal trust property and funds are protected, preserved, and managed to produce the highest and best use of those assets (Compl. ¶ 23; Def.'s Mot. to Dismiss, Ex. A ¶ 15);
- collecting trust funds rightly owed to plaintiff (Compl. ¶ 25; Def's Mot. to Dismiss, Ex. A ¶ 16);
- creating trust accounts to hold these funds (Compl. ¶ 25; Def.'s Mot to Dismiss, Ex. A ¶ 16);
- ensuring that monies owed or paid for the loss or use of tribal lands and trust resources are placed into those accounts (Compl. ¶ 25; Def.'s Mot. to Dismiss, Ex. A ¶ 16);
- maintaining adequate systems and controls to guard against dishonesty or errors (Compl. ¶ 25; Def.'s Mot. to Dismiss ¶ 16);
- refraining from self-dealing (Compl. ¶ 25; Def.'s Mot. to Dismiss, Ex. A ¶ 16);
- consulting with plaintiff regarding management of trust property (Compl. ¶ 25; Def.'s Mot. to Dismiss, Ex. A ¶ 16);
- maintaining adequate, regular, and accurate records of accounting (Compl. ¶ 25; Def.'s Mot. to Dismiss, Ex. A ¶ 16);
- providing regular and accurate accounting to plaintiff (Compl. ¶ 25; Def.'s Mot. to Dismiss, Ex. A ¶ 16).

Moreover, in both complaints plaintiff alleges—in almost identical language—that defendant has failed to provide plaintiff with accurate accounting. (Compl. ¶ 28; Def.'s Mot. to Dismiss, Ex. A ¶ 18). Indeed, plaintiff alleges in the Complaint that the very purpose of the district court suit is to obtain information necessary to ascertain the damages sought before this court. (Compl. ¶ 36).

Most striking of all, the similarities between these complaints are comparable to those in *Tohono O'Odham* itself:

> The two actions both allege that the United States holds the *same assets* in trust for the Nation's benefit. They describe almost identical breaches of fiduciary duty—*that the United States engaged in self-dealing and imprudent investment, and failed to provide an accurate accounting of the assets held in trust, for example*. Indeed, it appears that the Nation could have filed two identical complaints, save the capital and prayer for relief, without changing either suit in any significant respect.

131 S. Ct. at 1731.

What was true in *Tohono O'Odham* is true in this case: two complaints that focus on the same trust and the same breaches share operative facts. Indeed, this court's pre-*Tohono O'Odham* jurisprudence is quite clear that such similarities go to more than just "background." For instance, in *Yankton Sioux Tribe*, the court found that a plaintiff's complaints in an Indian trust case shared operative facts when they "allege[d] breaches of duty arising from the same trust relationship and involving the same trust property." 84 Fed. Cl. at 232. The court rejected the very argument plaintiff advances here: that the operative facts were distinguishable on the ground that one complaint focused on the defendant's mismanagement of the trust property whereas the other focused on the defendant's failure to account for trust property and funds. *Id.*

at 232-33 (holding that such differences "simply focus on differing aspects of the same relationship"); *accord E. Shawnee Tribe of Okla. v. United States*, 82 Fed. Cl. 322, 326-27 (2008) (finding operative facts in an Indian trust case where "[t]he two claims involve the same parties, the same trust corpus, and the same breach of the same trust duties over the same time period" and "[t]he only apparent factual difference is a narrower focus on the accounting aspects of the alleged breaches of trust duties in the district court case"), *aff'd*, 2011 WL 5317384 (Fed. Cir. Nov. 3, 2011); *Ak-Chin*, 80 Fed. Cl. at 319 ("The nature of Indian trust cases and the government's trust responsibility owed to Indian tribes does not lend itself to a simple delineation or separation of operative facts as they pertain to the government's various duties owed to Indian tribes.").

Simply put, plaintiff's argument that § 1500 does not apply because one complaint focuses on management duties whereas the other focuses on accounting duties is erroneous because both complaints entail the same operative facts. Indeed, since *Tohono O'Odham Nation*, several Indian trust cases have been dismissed by this court on the ground that complaints, nearly identical to the ones at issue here, contained substantially the same operative facts. *See, e.g.*, *Prairie Band of Potawatomi Indians v. United States*, 06-921L (Nov. 29, 2011); *Iowa Tribe of Kansas and Nebraska v. United States*, 06-920L (Nov. 17, 2011); *Oglala Sioux Tribe v. United States*, 05-1378L (Oct. 27, 2011); *Winnebago Tribe of Nebraska v. United States*, 06-913L (Oct. 25, 2011); *Omaha Tribe of Nebraska v. United States*, 06-911L (Oct. 7, 2011); *Cheyenne River Sioux Tribe v. United States*, 06-915L (Oct. 7, 2011).

### III. CONCLUSION

Because the operative facts contained in plaintiff's complaint are substantially the same as those in its district court complaint, this court lacks jurisdiction under 28 U.S.C. § 1500. Accordingly, defendant's motion to dismiss is GRANTED. The Clerk is directed to take the necessary steps to dismiss this matter.

**IT IS SO ORDERED.**

s/ *Lawrence J. Block*
Lawrence J. Block
Judge